IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                              Civil Action No. 3:15cv161

LEWIS F. CARTER,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the United States of America's Motion for

Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[1]  (ECF No. 19).  Defendant

Lewis F. Carter has responded,[2] (ECF No. 24-1), and the United States has replied.  (ECF

---

[1] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.**  A party
> may move for summary judgment, identifying each claim or defense—or the part
> of each claim or defense—on which summary judgment is sought.  The court
> shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law.

Fed. R. Civ. P. 56(a).

[2] Carter failed to respond properly to the United States' Motion for Summary Judgment.
Although Carter served a responsive document on the United States, he did not file a copy with
the court by delivering it to the Clerk's Office as required by the Federal Rules of Civil
Procedure and Local Rules for the United States District Court for the Eastern District of
Virginia.  Fed. R. Civ. P. 5(d)(1) ("Any paper after the complaint that is required to be served—
together with a certificate of service—must be filed within a reasonable time after service.");
Fed. R. Civ. P. 5(d)(2) (filing by delivering the paper "to the clerk");  E.D. Va. Loc. Civ. R.
7(F)(1) ("[T]he opposing party shall file a responsive brief and such supporting documents as are
appropriate . . . .").
    The United States forwarded the responsive document, which Carter had labeled
improperly as a "First Objection," and asked the Court to file it.  (ECF No. 24.)  Given Carter's

No. 22).  The Court dispenses with oral argument because the materials before the Court

adequately present the facts and legal contentions necessary to resolve the United States' Motion

for Summary Judgment, and argument would not aid the decisional process.

Accordingly, this matter is ripe for disposition.  For the reasons that follow, the Court

will grant the United States' Motion for Summary Judgment.  (ECF No. 19.)

## I.  Standard of Review Under Federal Rule of Civil Procedure 56

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record

as a whole and in the light most favorable to the nonmoving party, determines that there exists no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248–50 (1986).  Once a party has properly filed evidence supporting the

motion for summary judgment, the nonmoving party may not rest upon mere allegations in the

pleadings, but instead must set forth specific facts illustrating genuine issues for trial.  *Celotex*

*Corp.*, 477 U.S. at 322–24.  These facts must be presented in the form of exhibits and sworn

affidavits.  Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most

favorable to the nonmoving party.  *Anderson,* 477 U.S. at 255.  Whether an inference is

reasonable must be considered in conjunction with competing inferences to the contrary.  *Sylvia*

*Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995).  Nonetheless, the nonmoving "party

is entitled 'to have the credibility of his evidence as forecast assumed.'"  *Miller v. Leathers*, 913

F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d

406, 414 (4th Cir. 1979)).  Ultimately, the court must adhere to the affirmative obligation to bar

---

*pro se* status, the Court directed the Clerk to docket Carter's "objection" and consider it timely
filed as Carter's response.  (ECF No. 26.)  The United States replied.  (ECF No. 22.)

factually unsupportable claims from proceeding to trial. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24).

## II. Factual and Procedural Background

### A.    Factual Background

This action arises from an effort by the United States to reduce to judgment the unpaid tax assessments, penalties, and interest owed by Carter for the following tax years:  1997–2000; 2002–2006; and, 2008–2009.  In accordance with 26 U.S.C. § 6203,[3] a delegate[4] of the Secretary of the Treasury of the United States made assessments[5] against Carter demonstrating his unpaid income tax liabilities.  The United States alleges that Carter owes $309,718.95.  Notice and demand for payment of the assessments have been provided to Carter.  Carter, however, has offered no competent evidence rebutting the assessments set forth by the United States.

### B.    Procedural History

On March 16, 2015, the United States filed its Complaint.  (ECF No. 1.)  On April 13, 2015, Carter answered.  (ECF No. 4.)  Since that time, Carter has peppered the Court record with a series of "motions" and "objections," all of which fail to comply with applicable federal rules,

---

[3] 26 U.S.C. § 6203 provides:

> The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary.  Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment.

26 U.S.C. § 6203.

[4] The United States submitted an affidavit of IRS Revenue Officer Wally Stark, who declared that the figures in Carter's assessments are true and correct.  (ECF No. 19-1.)

[5] The assessments relied on by the United States in this case are IRS Form 2866 Certificates of Official Record.

and all of which, ultimately, lack merit.  The Court will untangle that procedural mire before addressing summary judgment.

Currently, Carter has five pending "motions" before the Court.  (ECF Nos. 11, 12, 28, 48, 49.)  Early in the progress of this case, Carter filed two "motions":  first, to determine the jurisdiction of the court; and, second, to determine the constitutional authority to enforce powers by "appropriate legislation" (collectively, the "Jurisdictional Motions").[6]  (ECF Nos. 11, 12.)

These "motions" iterate the core of Carter's position at bar, to the extent it can be distilled.  In essence, Carter contends that the United States comes to the Court in error because Congress expressed the power to lay and collect taxes in the Sixteenth Amendment[7] without what he calls an "enabling enforcement clause"[8] found in other constitutional amendments. Carter sees no basis to collect taxes directly from him under Article I, Section 8 of the Constitution.[9]  Carter claims that his correct reading of the law shows that the government lacks

---

[6] The United States responded to the Jurisdictional Motions (ECF Nos. 15, 16), and Carter replied.  (ECF Nos. 17, 18.)

[7] The Sixteenth Amendment provides

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

U.S. Const. amend. XVI.

[8] Carter contends that some form of enabling language (akin to: "[t]he Congress shall have the power to enforce this article by appropriate legislation") can be found in several other constitutional amendments.  The absence of this language in the Sixteenth Amendment, Carter says, limits Congressional powers as to taxation.

[9] Article 1 enumerates Congressional taxing powers as follows:

The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general

power to impose and collect his taxes.[10]  Because the government cannot legally tax him under

the Constitution, Carter contends in circular fashion, this Court lacks jurisdiction to adjudicate

the government's claim.[11]

      Carter's remaining three motions ultimately rest on the same theories raised in the

Jurisdictional Motions.  First, in August 2015, Carter filed an "objection and motion" to

determine the constitutional nature of the taxes pursued.  (ECF No. 28.)  In this August

"objection and motion," Carter added to his jurisdictional arguments his new opposition to the

request from the United States to decide summary judgment without an oral hearing.  Carter

proclaims that a decision on the papers would violate his due process rights and right to a jury

trial.  In December 2015, Carter filed the final two documents characterized as "motions."  First,

he filed a "motion" demanding that the United States be required to characterize specific

authorities that clarify the constitutional and jurisdictional bases of this case.[12]  (ECF No. 48.)

Second, Carter filed an "objection and motion" to void the Court's Initial Pretrial Order, seeking

---

    Welfare of the United States; but all Duties, Imposts and Excises shall be uniform
throughout the United States;

U.S. Const. art. I, § 8, cl. 1.

[10] Because of the procedural deficiency with which they are brought, the Court need not
address the merits of the taxation aspect of Carter's Jurisdictional Motions.  Even if the Court did
so, for the reasons more fully articulated in Section III.A, Carter's claims would fail.

[11] Because of the procedural deficiency with which they are brought, the Court need not
address the aspects of Carter's Jurisdictional Motions that claim this Court lacks jurisdiction to
hear this matter.  Even if the Court did so, for the reasons more fully articulated in Section III.B,
Carter's claims would fail.

[12] This document is styled as an "objection" to plaintiff's refusal to answer interrogatories
*and* motion to compel the disclosure of specific constitutional authorities.  In it, Carter refers to
interrogatories not in the record.  Carter submitted this document twice.  The Clerk first filed it
as an objection, (ECF No. 47), and then filed the duplicate as a motion.  (ECF No. 48.)

relief and a hearing so as to preserve his due process and jury trial rights.[13] (ECF No. 49.) In this final "motion," Carter seeks to void this Court's pretrial order pursuant to Federal Rule of Civil Procedure 60(b)(3) and (4) because, Carter contends, the Court has no jurisdiction to hear the case.[14] (ECF No. 49.)

In addition to his five "motions," Carter has filed at least eight "objections." In addition to the two "objections" noted above, the documents include an October "objection" to the "mischaracterization" of his position "by the Court," as to the nature of his claim.[15] (ECF

---

[13] Carter had previously filed an "objection" and "motion" seeking to void the Court's pretrial order. (ECF 37.) The previous document, while not an exact duplicate of the motion above, constitutes close to a mirror image. The earlier filing also appends documents not included in the December filing.

[14] Federal Rule of Civil Procedure 60(b) provides, in relevant part:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void.

Fed. R. Civ. P. 60(b)(3), (4).

Importantly, Rule 60(b) is limited to *final* judgments, orders, and proceedings. *See* Fed. R. Civ. P. 60 advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."). Plainly, the Court's issuance of an Initial Pretrial Order does not constitute a final judgment, order, or proceeding, so Carter's efforts to void the order are entirely misguided.

[15] Carter takes issue with the Court's purported characterization of his legal argument. At the time of filing, however, the Court had not ruled and had taken no position as to Carter's

No. 30.)  Later in October, Carter filed an "objection" claiming denial of due process of law,

citing expanded (and ultimately unpersuasive) authority to reiterate the arguments in his

Jurisdictional Motions.  (ECF. No. 31.)

In December, Carter filed an "objection" to the appearance of counsel for the United

States, Kieran O. Carter.  Carter seeks to bar Kieran Carter's appearance on the grounds that

attorneys on behalf of the United States are "**not** constitutionally authorized to appear" because

the United States government does not have constitutional authority to enforce federal income

tax laws.[16]  (ECF No. 39 (emphasis in original).)  Finally, Carter filed three "objections" that

appear to be evidentiary in nature.[17]

---

previous filings.  Elsewhere, Carter seems to contend that by "accepting" pleadings from the
United States, the Court somehow "adopt[s]" the arguments within them.  ("In this case, the
Plaintiff has argued, and the district court has declared on the record of this action in accepting
the Plaintiff [sic] arguments in pleading, that the fundamental taxing power [withstands
scrutiny].") (ECF No. 37, ¶ 8.)  Carter is wrong.

[16] This "objection" is procedurally flawed.  Even so, Carter's attempt to raise arguments
from his Jurisdictional Motions in this new context founders.  28 U.S.C. § 515(a) permits Kieran
O. Carter, as a Department of Justice attorney, to represent the United States in "any kind of
legal proceeding, civil or criminal," when directed to do so by the Attorney General.  In the same
vein, 28 C.F.R. § 0.70 delegates the prosecution of civil suits arising under the internal revenue
laws to the Department of Justice, Tax Division, the government agency that employs Kieran O.
Carter.

[17] All these "objections" fail to follow procedural dictates.  They also lack merit.  First,
Carter "objects" to the government filing of "fraudulent assessment certificates" in part because
"Form 1040 is **not** a tax return form that is authorized for use by IRS employees under the . . .
substitute for return authorities." (ECF No. 40, ¶ 15 (emphasis in original).)  Second, Carter
"objects" to IRS Agent Wally Stark serving as a witness in the case because the tax code limits
the authority of IRS Agents to act as witnesses to a portion of the codes that governs only
"LIQUOR, TOBACCO, and FIREARMS, **but not in regards to any** *income tax*." (ECF No.
41, ¶ 6 (emphasis in original).)  Finally, Carter "objects" to the government's rebuttal exhibit list
and seeks to strike all exhibits as inadmissible poisoned fruit.  (ECF No. 50.)  Carter contends
that the gathering of evidence exceeds the statutory authority IRS employees have to act.  As
with his Jurisdictional Motions, Carter misreads the law, and his arguments fail.  *See* Section
III.B.

### C.      Carter's Procedural Motions and Objections, As Well As His Jurisdictional Arguments, Utterly Lack Merit

Carter's filings run afoul of procedural rules that would allow this Court to entertain any of the "motions" or "objections" above. First, he ignores Local Civil Rule 7[18] by failing to cite a proper rule or ground for relief under which he makes these myriad filings.[19] Second, he lodges a series of "objections" when no procedure to do so exists. Finally, none of these filings can be deemed "timely" because their peripatetic appearance on the docket disregards any trial schedule set by this Court. For these reasons alone, the Court could deny these "motions" and "objections."

---

[18] Local Civil Rule 7 provides in pertinent part:

**(A) Grounds and Relief to be Stated:** All motions shall state with particularity the grounds therefor and shall set forth the relief or order sought.

. . . .

**(F) Briefs Required:**

(1) All motions, unless otherwise directed by the Court . . . shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies.

. . . .

**(H) Filing of Pleadings:** After the filing of the complaint, all pleadings, motions, briefs, and filings of any kind must be timely filed with the Clerk's Office of the division in which the case is pending.

E.D. Va. Loc. Civ. R. 7.

[19] The only filing in which Carter cites to a Federal Rule of Civil Procedure providing the grounds for the relief sought is his December 9, 2015 filing, which seeks to void the Court's Initial Pretrial Order. As noted previously, however, Federal Rule of Civil Procedure 60(b) has no effect in the absence of a final judgment.

Regardless, Carter's Jurisdictional Motions and other "motions" entirely lack merit. The Court notes above, and explains more fully in Section III, why it must reject, under the law, all issues raised by Carter here.

## III.  Analysis

For the reasons stated below, the Court will grant the United States' Motion for Summary Judgment.  Because Carter does not identify any disputed material facts, the Court turns first to Carter's threshold legal arguments:  (1) whether the federal government has taxation powers; (2) whether this Court has jurisdiction to hear the claim brought by the United States; and, (3) whether the issuance of summary judgment violates the Seventh Amendment of the United States Constitution's right to a trial by jury.[20]  Finally, the Court will assess the evidence submitted by the United States with respect to the unpaid tax assessments, penalties, and interest owed by Carter.

### A.      The United States Can Impose and Collect a Federal Income Tax

Throughout his filings in this Court, Carter questions the authority of the United States to enforce federal income tax laws.  Carter cannot prevail on this argument.

The United States has authority to impose and collect a federal income tax. "The law is clear that the income tax as applied by the IRS is legal and constitutional." *United States v. Bartrug*, 777 F. Supp. 1290, 1292 (E.D. Va. 1991) (citations omitted), *aff'd*, No. 91-5895, 1992 WL 259194, at *1 (4th Cir. Oct. 7, 1992). "[T]he United States Supreme Court has consistently

---

[20] The Seventh Amendment to the United States Constitution provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII.

interpreted the federal income tax for [now almost 100] years. Since 1916, the [Supreme] Court has construed the tax as an indirect tax authorized under Article I, Section 8, Clause I of the [United States] Constitution, as amended by the Sixteenth Amendment." *United States v. Melton*, No. 94-5535, 1996 WL 271468, at *2 (4th Cir. May 22, 1996) (citing *Brushaber v. Union Pac. R.R. Co.*, 240 U.S. 1, 11, 16–19 (1916)). "[T]he debate over whether the income tax is an excise tax or a direct tax is irrelevant to the obligation of citizens to pay taxes and file returns." *Id.* at *2 (citation omitted). "Furthermore, the duty to file returns and pay income taxes is clear." *Id.* at *3 (citing and describing pertinent sections of the Internal Revenue Code). That duty "is 'manifest on the face of the statutes, without any resort to IRS rules, forms or regulations.'" *Id.* (quoting *United States v. Bowers*, 920 F.2d 220, 222 (4th Cir. 1990)). Plainly, Carter's objection to the United States' authority to impose and collect a federal income tax is without merit.

### B.     This Court Has Jurisdiction to Hear the Claim Brought by the United States

Carter's claim that this Court lacks subject matter jurisdiction does not withstand scrutiny. Several statutes confer federal question jurisdiction, as defined in 28 U.S.C. § 1331, on this Court.

First, this Court has subject matter jurisdiction over this matter under three federal statutes: (1) 28 U.S.C. § 1340; (2) 28 U.S.C. § 1345; and, (3) 26 U.S.C. § 7402. The first statute, 28 U.S.C. § 1340, grants the district court "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue." 28 U.S.C. § 1340. Thus, the United States' claims regarding Carter's unpaid federal income tax assessments and penalties squarely fall within the "original jurisdiction" described in 28 U.S.C. § 1340. The second statute, 28 U.S.C. § 1345, provides this Court with "original jurisdiction of all civil actions, suits or

proceedings commenced by the United States." 28 U.S.C. § 1345. The United States is the

plaintiff in this case and "commenced" these proceedings against Carter. Therefore, Section

1345 provides another basis for the exercise of subject matter jurisdiction. And finally, 26

U.S.C. § 7402 affords the district court with "jurisdiction to . . . render . . . judgments and

decrees as may be necessary or appropriate for the enforcement of the internal revenue laws."

26 U.S.C. § 7402(a). The remedy that the United States seeks, entry of judgment in the amount

of the unpaid assessments and penalties, is clearly "necessary or appropriate" to "enforce[ ]" the

internal revenue laws of the United States. Accordingly, this Court has subject matter

jurisdiction over this case.

### C.     Scope of the Seventh Amendment's Right to Trial by Jury

The Seventh Amendment to the United States Constitution provides that "[i]n [s]uits at

common law, where the value in controversy shall exceed twenty dollars, the right of trial by

jury shall be preserved." U.S. Const. amend. VII; *see also* Fed. R. Civ. P. 38(a) ("The right of

trial by jury as declared by the Seventh Amendment to the Constitution . . . is preserved to the

parties inviolate.").

"Although the thrust of the [Seventh] Amendment was to preserve the right to jury trial

as it existed in 1791, it has long been settled that the right extends beyond the common-law

forms of action recognized at that time." *Curtis v. Loether*, 415 U.S. 189, 193 (1974). Indeed,

the Seventh Amendment's right to a trial by jury has been held to extend "to all [civil] suits,

whether at common law or arising under federal legislation, where *legal* rights are involved."

*Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir. 1994); *see also Parsons v. Bedford*,

28 U.S. (3 Pet.) 433, 446–47 (1830) (Story, J.) ("In a just sense, the amendment then may well

be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights.").

### D. The Court's Consideration of Summary Judgment Does Not Implicate Carter's Seventh Amendment Right to Trial by Jury

Despite the Seventh Amendment's far-reaching protection, many procedural devices that diminish "the civil jury's historic domain have been found not to be inconsistent with the Seventh Amendment." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) (citing various examples of procedural devices that have been held *not* to violate the Seventh Amendment). These procedural devices include: directed verdict, *see, e.g.*, *Galloway v. United States*, 319 U.S. 372, 388 (1943); motion to set aside verdict, *see, e.g.*, *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 496 (1931); and summary judgment, *see, e.g.*, *Fid. & Deposit Co. of Md. v. United States*, 187 U.S. 315, 320 (1902); *cf. Walker v. N.M. & S. P. R. Co.*, 165 U.S. 593, 596 (1897) ("The [S]eventh [A]mendment . . . does not attempt to regulate matters of pleading or practice . . . .").

*Fidelity & Deposit Co. of Maryland* provides particularly useful instruction here. That case concerned the Supreme Court of the District of Columbia's "73d rule," which was adopted pursuant to rulemaking power delegated by Congress. 187 U.S. at 318. The 73d rule required defendants, in certain contract actions, to file an affidavit "specifically stating . . . in precise and distinct terms, the grounds of his [or her] defen[s]e." *Id.* (internal quotation marks omitted).[21] In

---

[21] The 73d rule at issue in *Fidelity & Deposit Co. of Maryland* provided in pertinent part:

> In any action arising *ex contractu*, if the plaintiff or his agent shall have filed, at the time of bringing his action, an affidavit setting out distinctly his cause of action, and the sum he claims to be due, exclusive of all set-offs and just grounds of defense, and shall have served the defendant with copies of his declaration and of said affidavit, he shall be entitled to a judgment for the amount so claimed, with interest and costs, unless the defendant shall file, along with his plea, if in

*Fidelity & Deposit Co. of Maryland*, the defendant's affidavit was found to be insufficient. *Id.* Thus, the court entered judgment for the plaintiff after finding satisfactory the plaintiff's declaration and supporting affidavit about contract terms and monetary amounts. *Id.*

The Supreme Court of the United States upheld the 73d rule against the defendant's argument that it violated the Seventh Amendment. *Id.* at 320. In holding that the Seventh Amendment did not render the rule unconstitutional, the Supreme Court explained that the heightened pleading rule simply "prescribe[d] the means of making an issue," and that, when "[t]he issue [was] made as prescribed, the right of trial by jury accrues." *Id.*; *cf. Ex parte Peterson*, 253 U.S. 300, 310 (1920) (Brandeis, J.) ("It does not infringe the constitutional right to a trial by jury [in a civil case], to require, with a view to formulating the issues, an oath by each party to the facts relied upon.").

Here, like the 73d rule, Federal Rule of Civil Procedure 56 simply "prescribe[s] the means of making an issue." That is, by demonstrating the existence of a genuine dispute of material fact, Carter has the means of making an issue to be heard by a jury. When and only if Carter makes an issue does his right to trial by jury accrue. Following *Fidelity & Deposit Co. of*

---

bar, an affidavit of defense denying the right of the plaintiff as to the whole or some specified part of his claim, and specifically stating also, in precise and distinct terms, the grounds of his defense, which must be such as would, if true, be sufficient to defeat the plaintiff's claim in whole or in part. And where the defendant shall have acknowledged in his affidavit of defense his liability for a part of the plaintiff's claim as aforesaid the plaintiff, if he so elect, may have judgment entered in his favor for the amount so confessed to be due.

. . .

Sec. 3. When the defendant is a corporation, the affidavit of defense may be made by an officer, agent, or attorney of such corporation.

*Fid. & Deposit Co. of Md.*, 187 U.S. at 318.

*Maryland*, "where summary judgment is properly granted, no Seventh Amendment issue arises." *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 221 n.12 (4th Cir. 1978) (citing *Fidelity & Deposit Co. of Md.*, 187 U.S. at 320); *see also Cooper v. City of Virginia Beach, Va.*, 817 F. Supp. 1310, 1316 n.4 (E.D. Va. 1993) ("The court does not violate any Seventh Amendment right by considering or granting summary judgment pursuant to Federal Rule of Civil Procedure 56."), *aff'd*, 21 F.3d 421 (4th Cir. 1994). Accordingly, so long as the Court finds summary judgment appropriate here, it does not disturb Carter's Seventh Amendment right to trial by jury.

### E.    The United States Is Entitled to Summary Judgment on Carter's Unpaid Tax Liabilities

The Court finds that there exist no genuine disputes of material fact and that the United States is entitled to judgment as a matter of law. In a tax collection case such as Carter's, the United States can establish a *prima facie* case by demonstrating that an assessment[22] has been made against the defendant. Indeed, the Supreme Court of the United States has held that an assessment "is entitled to a legal presumption of correctness." *Fior D'Italia, Inc.*, 536 U.S. at 242; *see also United States v. Register*, 717 F. Supp. 2d 517, 522 (E.D. Va. 2010) ("Such certificates are presumed correct unless the defendant provides proof to the contrary."). Thus, when the United States demonstrates that an assessment has been made against a defendant, that defendant bears the burden of rebutting the presumption of correctness. *See Foster v. Comm'r of Internal Revenue*, 391 F.2d 727, 735 (4th Cir. 1968); *see also Higginbotham v. United States*, 556 F.2d 1173, 1175 (4th Cir. 1977) ("The presumption of administrative regularity, the need to encourage taxpayers to keep records, and the governmental interest in facilitating the collection

---

[22] An assessment made by the Internal Revenue Service ("IRS") constitutes a determination of an unpaid tax liability owed to the United States. *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002).

of taxes justify requiring the taxpayer to pay what the Government asks unless he can prove that the Government's assessment is excessive."). Guided by this burden-shifting framework, the Court addresses the evidence before it.

### 1.   The United States Demonstrates That Assessments Have Been Properly Made Against Carter

The United States presents competent evidence that, in accordance with 26 U.S.C. § 6203, Wally Stark, a delegate of the Secretary of the Treasury of the United States, made assessments against Carter demonstrating unpaid income tax liabilities for the following tax years:  1997–2000; 2002–2006; and, 2008–2009. (Mem. Supp. Mot. Summ. J., Ex. 1.)  Further, the evidence illustrates that penalties were properly assessed against Carter under 26 U.S.C. §§ 6651[23] and 6654[24] for failing to:  (1) file timely tax returns and pay the amounts due; and, (2) make required tax deposits. (*See id.*)  Finally, the United States establishes that, from the date Carter's tax liabilities and penalties became due, interest has been assessed against him under 26 U.S.C. §§ 6601(a) and (b),[25] at the rate set forth in 26 U.S.C. § 6621(a).[26] (*See id.*)  In total, as of

---

[23] 26 U.S.C. § 6651 provides penalties for, among other things, the failure to timely pay taxes and the failure to timely pay taxes after the issuance of notice.

[24] 26 U.S.C. § 6654 provides penalties for the underpayment of taxes.

[25] 26 U.S.C. §§ 6601(a) and (b) provide, in pertinent part:

**(a) General rule. —** If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

**(b) Last date prescribed for payment. —** For purposes of this section, the last date prescribed for payment of the tax shall be determined under chapter 62 with the application of the [rules articulated in subsections (1)–(5)].

26 U.S.C. § 6601(a), (b).

January 5, 2015, the United States has demonstrated that Carter owes $309,718.95, plus statutory additions accruing thereafter until paid. In light of the United States' evidence, the burden shifts to Carter to rebut the assessments' presumption of correctness.

### 2.    Carter Fails to Demonstrate a Genuine Dispute of Fact Concerning the Validity of the Assessments

By resting his argument upon mere *allegations*, and not competent *evidence*, Carter fails to meet his burden of demonstrating the existence of a dispute of material fact. In essence, Carter baldy alleges that disagreements remain between the litigants to this case, but he fails to point to *any evidence* supporting the basis of his purported disagreement, which the assessments of the United States plainly belie. Carter's legal theories resoundingly falter alongside the clear precedent supporting positions taken by the United States. For instance, according to Carter, his conclusory objection precludes application of Rule 56. Carter's peculiar reading of Rule 56, however, would render the rule effective only in cases in which the non-moving party concedes that the moving party's evidence warrants summary judgment. Binding case law makes clear that such an argument cannot prevail. *See Anderson*, 477 U.S. at 248–49 ("[T]here is no issue

---

[26] 26 U.S.C. § 6621(a) provides, in pertinent part:

**(a) General rule. —**

> **(1)** Overpayment rate. — The overpayment rate established under this section shall be the sum of—
>
>> **(A)** the Federal short-term rate determined under subsection (b), plus
>>
>> **(B)** 3 percentage points (2 percentage points in the case of a corporation) . . . .

26 U.S.C. § 6621(a).

for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").[27]

Accordingly, the Court will grant summary judgment to the United States. The United States is thus entitled to a judgment against Carter for his unpaid federal tax debt in the amount of $309,718.95, plus statutory additions accruing thereafter until paid.

### IV. Conclusion

For the foregoing reasons, the Court will grant the Motion for Summary Judgment brought by the United States. (ECF No. 19.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 12/31/15

---

[27] This District and other courts have reached the same conclusion when faced with similar challenges by individuals facing outstanding tax liabilities. *See, e.g.*, *Register*, 717 F. Supp. 2d at 522–23 (granting summary judgment after concluding that the defendant failed to offer any evidence suggesting that a genuine issue of material fact exists with respect to the United States' action to reduce to judgment his federal tax assessments); *United States v. Sasscer*, No. Civ. Y-97-3026, 2000 WL 1683465, at *2 (D. Md. Nov. 8, 2000) (granting summary judgment in light of the defendant's failure to present any evidence contradicting the IRS's assessment or otherwise raising any issue of fact), *appeal dismissed*, 8 F. App'x 226 (4th Cir. 2001).